**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

LUKE DANIELS,

               Plaintiff,

               v.                      Case No. 1:20-cv-2046

K&JK ENTERPRISES, INC.,

               Defendant.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Luke Daniels, by and through his counsel, alleges as follows:

**NATURE OF THE ACTION**

1.     Mr. Daniels suffered an adverse employment action after his employer found out that he is transgender. Mr. Daniels applied for a job at a Burger King restaurant operated by Defendant K&JK Enterprises, Inc. ("KJKE"), a Burger King franchisee. He interviewed, was determined to be the best candidate, and hired. Upon learning that Mr. Daniels is transgender, his job offer was immediately revoked.

2.     Mr. Daniels seeks damages and equitable relief to remedy injuries caused by KJKE's unlawful sex-based employment actions under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

**JURISDICTION AND VENUE**

3.     This Court has jurisdiction under 28 U.S.C. § 1331.

4.     This action is authorized and brought pursuant to 42 U.S.C. §§ 2000e-5.

5.     Venue is proper under 28 U.S.C. § 1391(b)(1)(2) as the events giving rise to this action occurred in this district.

## PARTIES

6.      Plaintiff Luke Daniels is a resident of Indiana and resides at 10835 Coppermill Circle Apt. 2A Indianapolis, IN 46234.

7.      At all times relevant to this action, Mr. Daniels was an employee within the meaning of Title VII.

8.      Defendant K & JK Enterprises, Inc., is a Franchisee of Burger King Corporation operating several Burger King restaurants in and around Indianapolis and central Indiana. KJKE is an Indiana corporation and maintains its principal place of business at P.O. Box 429, Brownsburg, IN, 46112.

9.      KJKE employs approximately 250 people and, at all times relevant to this proceeding, was an employer within the meaning of Title VII.

## ADMINISTRATIVE PROCEEDINGS

10.     Mr. Daniels filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 28, 2018.

11.     Mr. Daniels' Notice of Right to Sue was issued on May 7, 2020.

12.     This action is timely commenced within ninety (90) days of Mr. Daniels's receipt of his Notice of Right to Sue.

13.     All conditions precedent to the initiation of this action have been satisfied.

## JURY DEMAND

14.     Mr. Daniels demands a trial by jury in this action.

## FACTUAL ALLEGATIONS

15.     Mr. Daniels is a transgender man. He was assigned female at birth and given the traditionally feminine name, "Lucile Jane Daniels," but has long been known as a man named Luke.[1]

16.     Mr. Daniels used KJKE's online application portal, "Snag a Job," to apply for a shift manager position at KJKE's Plainfield Burger King. The application was submitted under Mr. Daniels' legal name at the time.

17.     Mr. Daniels' initial application was reviewed on August 30, 2018, by then-manager of the Plainfield location, Tyler Sims.

18.     Mr. Sims and Mr. Daniels knew each other from their previous mutual employment where Mr. Sims was Mr. Daniels supervisor.

19.     Based on his experience as Mr. Daniels' former supervisor, Mr. Sims thought Mr. Daniels would be an asset to Burger King but that he should apply to a different location with immediate hiring needs.

20.     Mr. Daniels submitted a second application on September 5, 2018 for a shift manager position at Burger King's 8310 W. 10th St. Indianapolis, IN 46234 location.

21.     Mr. Sims contacted the 10th St. General Manager at the time, Hailey Curry, to give his recommendation in support of Mr. Daniels' application.

22.     Mr. Daniels interviewed with Ms. Curry on September 11, 2018, when he introduced himself as Luke and clarified that he uses male pronouns, he/him/his.

23.     After discussing his work and management history at similar restaurants, Ms.

---

[1] Mr. Daniels name was legally changed from Lucile Jane Daniels to Luke Daniels on February 29, 2019. At all times relevant to this complaint, Mr. Daniel's legal name was Lucile Daniels.

Curry told Mr. Daniels that he would be a great fit for the store and concluded the interview with a verbal offer.

24.     Mr. Daniels accepted and was marked in the applicant portal as "hired" as of September 13, 2018, with a start date of September 14, 2018.

25.     Ms. Curry contemporaneously notified KJKE Director of Operations, Phil Ventura, that Mr. Daniels was hired.

26.     After receiving notice of Mr. Daniels' hiring, Mr. Ventura called Mr. Sims to ask about Mr. Daniels' first application and why Sims had not hired "Ms. Daniels."

27.     Mr. Sims explained that the former applicant is Mr. Daniels, that "Lucile" was his legal name but he is transgender and uses the name Luke and he/him pronouns and that Mr. Daniels had been hired at the 10th St. Location.

28.     Despite being advised of Mr. Daniels' gender, Mr. Ventura continued to refer to Mr. Daniels as "Lucile," "Ms.," and with female pronouns.

29.     Mr. Ventura ended the call stating "I wouldn't have hired her either. It's all about the demographics." This comment was understood to mean that Mr. Daniels should not be hired because he is transgender.

30.     Minutes after this call, Mr. Daniels received a phone call from then-assistant manager Crystal Fordyce, who told Mr. Daniels that he would not in fact be hired as shift manager at KJKE's 10th Street location. No justification was given.

31.     Approximately two hours later, Mr. Daniels received another call from Ms. Fordyce stating that the store would in fact move forward with his hiring.

32.     Mr. Daniels then received, executed, and returned his new hire paperwork.

33.     Later that evening, between 9:00-10:00 p.m., Mr. Daniels received additional

calls from Ms. Fordyce, who told Mr. Daniels that Mr. Ventura directed her to get information about Mr. Daniels' 2015 dismissed theft charge.

34.     Mr. Daniels truthfully answered these questions, despite application materials stating that applicants should not disclose dismissed charges and dismissed charges are not considered in hiring decisions.

35.     After answering these questions and offering to speak with Mr. Ventura to address any additional questions, Mr. Daniels was instructed to come into the store the next day, September 14, 2018.

36.     When Mr. Daniels arrived on September 14, 2018, he was told that his job offer was revoked because of "insufficient work history," even though his employment history was discussed at his interview, described as making him a "great fit," and led to his verbal offer.

37.     Mr. Daniels again asked to speak with Mr. Ventura directly for clarification, but Mr. Ventura refused.

38.     Ms. Fordyce confirmed that Mr. Daniels' job offer was revoked, this time stating that Mr. Daniels "would not be a good fit for the position."

39.     In the online applicant portal, Mr. Daniels' "hired" status was then changed to "terminated" with the false notation that he "did not take the job."

40.     KJKE admitted in EEOC proceedings that Mr. Daniels' job offer was revoked, not declined.

41.     The decision to revoke Mr. Daniels' job offer was made by Ventura, who exercises control over hiring decisions as Director of Operations.

42.     In response to Mr. Daniels' EEOC Charge of Discrimination, KJKE offered a fourth justification for the decision to revoke Mr. Daniels' offer—that the offer was revoked

because of the 2015 dismissed theft charge.

43.     KJKE routinely hires cisgender employees with criminal convictions and on active work release for managerial positions.

44.     After Mr. Daniels' offer was revoked, KJKE filled the position by hiring a cisgender man with prior felony convictions.

45.     KJKE's decision to revoke Mr. Daniel's job offer was motivated by intentional sex discrimination and Ventura's animus towards Mr. Daniel's transgender status.

46.     KJKE's conduct was intentional and committed with malice or reckless indifference to Mr. Daniels' federally protected rights.

## COUNT I: VIOLATION OF TITLE VII
## SEX DISCRIMINATION

47.     Mr. Daniels restates and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

48.     KJKE discriminated against Mr. Daniels on the basis of his sex by revoking his job offer and terminating his employment because he is transgender.

49.     KJKE knowingly acquiesced in the discriminatory employment action of its employee by failing to train, investigate, remedy, or otherwise act in response to knowledge that its decisionmaker engaged in discriminatory conduct.

50.     KJKE's actions and omissions described herein constitute intentional sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*

51.     KJKE's actions have caused Mr. Daniels economic and emotional damages, including but not limited to lost earnings, lost benefits, lost employment opportunities, humiliation, emotional distress, and mental anguish.

## REQUEST FOR RELIEF

WHEREFORE, Mr. Daniels respectfully requests the Court enter judgment in his favor and award the following relief:

a.  Declaring KJKE's conduct to be in violation of Title VII;

b.  Issuing a permanent injunction requiring KJKE to take such affirmative actions as necessary to eliminate discriminatory conduct;

c.  All earnings together with other benefits to which Mr. Daniels is entitled, including but not limited to wages and other lost benefits;

d.  Compensatory damages;

e.  Punitive damages due to KJKE's willful and/or reckless disregard for Mr. Daniels's statutorily protected rights;

f.  Pre-judgment and post-judgment interest;

g.  All costs and reasonable attorneys' fees of this action; and

h.  Such other relief as this Court may deem just and proper.

Respectfully submitted,

INDIANA LEGAL SERVICES

*/s/Kathleen Cullum*
Kathleen Cullum (#35437-49)
1200 Madison Ave., Suite 300
Indianapolis, IN 46225
Phone: (317) 744-5799
Fax: (317) 269-7219
Email:  Kathleen.cullum@ilsi.net

*Attorneys for Plaintiff Luke Daniels*